**In re Deborah Jane NIGRO, Debtor.**

**SUN BANK OF WILTON MANOR, Plaintiff,**

v.

**Deborah Jane NIGRO, Defendant.**

**Bankruptcy No. 81–00180–BKC–JAG.**
**Adv. No. 81–0238–BKC–JAG–A.**

United States Bankruptcy Court,
S. D. Florida.

Dec. 1, 1981.

---

Ronald W. Houchins, Coral Springs, Fla., for debtor-defendant.

Law Offices of Leon R. Margules, South Miami, Fla., for plaintiff.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GLASSEN, District Judge.

This matter was tried before the court on October 19, 1981 on the plaintiff's amended complaint objecting to the dischargeability of a debt (C.P. No. 5), the answer and affirmative defense (C.P. No. 6) and answer to defendant's affirmative defense (C.P. No. 7).

Apparently the plaintiff is seeking to have the debt of the debtor to it declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) although there is no reference to that statute in the pleading. In its original complaint (C.P. No. 1) the plaintiff apparently objected to discharge under 11 U.S.C. § 747 without making reference to that section of the statute. 11 U.S.C. § 523(a)(2)(A) is the only section upon which plaintiff could possibly be relying and it is the section that was interpreted and applied by the Honorable Sidney M. Weaver in the case of *Southeast Services, Inc. vs. Vegh*, United States Bankruptcy Court, Southern District of Florida, Adversary Case No. 81–0254–BKC–SMW–A, under circumstances which have some similarity to the facts in this case.

The only evidence presented by the plaintiff was a composite exhibit (Exhibit No. 1) consisting of copies of statements on the defendant's Master Charge account from April, 1980 through February, 1981 with the exception of the statement for December, 1980. We also take judicial notice of the schedules and statement of affairs filed by the debtor in her chapter 7 case (Case No. 81–00180–BKC–JAG).

The obligation of the defendant to the plaintiff in this case arises from the defendant's use of a credit card issued to her and serviced by the plaintiff. Her credit limit on the use of said card was $1,000. Composite Exhibit No. 1 shows that in April, 1980, the balance which the defendant owed was slightly less than $700. The account was unremarkable through August, 1980, during which months the defendant made very few charges and paid each month the minimum required payment amounting to approximately five percent of the balance due. In September, 1980, the account was increased by $300 in the form of an actual cash advance from the plaintiff to the defendant. This (plus some small purchases) reduced by the minimum payment brought the account to slightly over $1,000 at the end of September, 1980. In October and November, 1980, the defendant made no Master Charge purchases on her account with the plaintiff but did pay the minimum monthly payment required in each of those two months. The balance due at the end of November, 1980 was $968.25. The statement for December, 1980 is missing but the statement for January, 1981 reflects a previous balance of $1,026.25 representing approximately a $58 increase from the end of November, 1980.

The crucial statement is the one with the closing date of January 26, 1981 in which there were twenty-five new purchases from December 15, 1980 through January 12, 1981, totaling $993.86 and with the finance charge of $23.90 raising the balance due to $2,044.01. That statement included the legend: "Your account is past due $51. The past due amount is included in the minimum payment. Please remit immediately." The minimum payment reflected on that statement was $153.

The witness through whom the plaintiff established Composite Exhibit No. 1 also testified that the bank notified the defendant on January 23, 1981 that she was over her limit. The statements reflect that the defendant made no charges after January 12, 1981.

The statement for February, 1981 (closing date February 24, 1981) shows no further charges and no payments. It reflects the addition of a finance charge bringing the balance due to $2,074.10 and bears the legend: "Your account is past due $153. The past due amount is included in the minimum payment. Please remit immediately." The minimum payment shown is $257.

No other evidence was presented in the case. From the evidence, the plaintiff asks us to conclude that the defendant's debt to it should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) by reason of the unusual twenty-five purchases increasing the balance due by approximately $1,000 from mid-December, 1980 through January 12, 1981. The plaintiff asks us to infer that this unusual increase just before and just after Christmas was in contemplation of the defendant's petition in bankruptcy which was filed on February 9, 1981. The pattern of purchases during that particular interval was grossly in excess of the purchases which the defendant had made since the preceding April. However, there is no showing that it differs in any significant way from her purchases in December, 1979 and the court can make no inference where there is no evidence one way or the other.

The debtor-defendant was unemployed at the time she filed her chapter 7 petition but showed that she earned $13,000 during the year 1980. The length of her unemployment prior to filing her petition has not been shown and the court has no evidence as to the length of said unemployment. Therefore, there is no basis to conclude that the defendant was totally without the means of paying her account, or at least the minimum payment demanded by the plaintiff, at the time she incurred the charges which in effect doubled the balance due on her account from approximately $1,000 to approximately $2,000.

The plaintiff suggests that the showing made by it is sufficient to have this court except the obligation to it from discharge under the authority of *Southeast Services, Inc. vs. Vegh* referred to above. We disagree. In the *Vegh* case, the defendant-debtor used her two credit cards with the Southeast Services, Inc. to make six hundred seventeen separate purchases of items for her personal use aggregating more than $24,000. Each of those purchases was in an amount less than $50 (the amount shown in that case to be the threshold for the merchant to check with the bank before completing the sale). In the *Vegh* case, the debtor's credit limit was $1,200 and by the time she filed her petition in bankruptcy she owed the complaining creditor $34,-573.18, approximately thirty times her credit limit, more than eighty percent of which had been incurred in one month. Vegh had averaged twenty purchases a day during the period of time involved in that case. In this case the defendant made only approximately one purchase per day during the crucial period. She made no purchases from January 12, 1981 to the date she filed her petition on February 9, 1981.

Therefore, we can not and do not find that this record depicts a conscious and willful scheme contrived and executed by the defendant-debtor to defraud the plaintiff-creditor as was found by Judge Weaver in the *Vegh* case.

The plaintiff has not carried its burden of proof to have the obligation to it excepted

from discharge under § 523(a)(2)(A) of the Bankruptcy Code. Therefore, as required by B.R. 921(a), we are this date entering a separate Final Judgment denying the plaintiff the relief sought by it.